# In the United States Court of Federal Claims

No. 17-1898T, 17-2022T, 17-2023T
(Decided: February 9, 2023)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DILLON TRUST COMPANY LLC, et al.,

                    *Plaintiffs*,

v.

THE UNITED STATES,

                    *Defendant.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Keywords: I.R.C. § 6603; Revenue Procedure 2005-18; RCFC 54(b); Motion for reconsideration; Illegal exaction; Abuse of discretion

    *Lawrence M. Hill,* Steptoe & Johnson LLP, Washington, DC, with whom were *Richard A. Nessler*, *Steven R. Dixon*, *Caitlin R. Tharp*, for plaintiffs.

    *Joseph A. Sergi*, Attorney of Record, United States Department of Justice, Tax Division, Court of Federal Claims Section, Washington, DC, with whom were *David A. Hubbert*, Deputy Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section, *Dara B. Oliphant*, Assistant Chief, Civil Trial Section – Central, *Margaret E. Sheer*, Trial Attorney, *Jeffrey N. Nuñez*, Trial Attorney, *Ryan O. McMonagle*, Trial Attorney, *Emily K. Miller*, Trial Attorney, for defendant.

## OPINION

BRUGGINK, *Judge.*

    The undisputed facts are as follows.[1] In late 2014, the Internal Revenue Service ("IRS") notified nine original Dillon family trusts

---

[1] The facts set out here are a streamlined version of the statement of facts in our previous order (ECF No. 118), which we had taken as alleged in the

1

("Original Trusts") that they might be held liable as transferees under I.R.C. § 6901 (2018) for Humboldt Shelby Holding Corporation's deficiency for the tax year that ended on November 30, 2003. After receiving the notices addressed to each Original Trust, plaintiffs informed the IRS that six Original Trusts terminated between 2007 and 2012 and distributed their assets to a number of successor trusts ("Successor Trusts"); plaintiffs also informed the IRS that another Original Trust distributed its assets to its Successor Trusts even though it did not terminate.[2] Every one of these trusts had a different Employer Identification Numbers ("EIN"), which is the number the IRS assigns business entities for taxpayer identification.

In May 2015, plaintiffs sent the IRS a single check for $71.7 million and requested that the sum be allocated as thirty separate deposits for two Original and twenty-eight Successor Trusts. Plaintiffs made the deposits in anticipation of possible future assessments—no liabilities had yet been assessed. In October 2016, the IRS issued notices of liability to each of the nine Original Trusts. As for the Successor Trusts, the IRS issued only pre-assessment letters in October 2016; it was not until October 2018 that the IRS issued notices of liability to the Successor Trusts.

In January 2017, plaintiffs requested in writing that the IRS use $20.2 million of prior deposits to pay the respective liabilities assessed against Trust 8545 ($19.7 million), Trust 709204 ($248,655), and Trust 709210 ($248,655). Specifically, plaintiffs directed the IRS to pay those amounts by

---

following: (1) plaintiffs' complaints in the pending refund suits; (2) the complaint filed in *Dillon Tr. Co. LLC v. Koskinen*, No. 1:17-CV-01571 (D. Colo. June 27, 2017); (3) the parties' stipulation of facts; (4) plaintiffs' pretrial memorandum of fact and law; (5) the appendix to plaintiffs' opposition to defendant's partial motion to dismiss for lack of subject matter jurisdiction or partial summary judgment. As stated in the order, defendant asserted that any dispute was "over the characterization of the facts or their materiality, rather than the facts in themselves." Order at 10. Many of the facts set out here are now included in the parties' updated stipulation of facts. *See* ECF No. 126, 143.

[2] Dillon Trust Company has brought these consolidated refund suits as trustee for Trust 709204, Trust 709210, and Trust 8545, which are three Original Trusts that have not terminated. For ease of reading, we refer to "plaintiffs" when plaintiffs' counsel was acting on behalf of all Dillon family trusts, not just plaintiffs. The parties agree that the liabilities of the terminated Original Trusts and their Successor Trusts will be determined as if they were also parties to these refund suits.

using the deposits that they had previously asked the IRS to allocate to Trust 709204, Trust 709210, and four Successor Trusts. The same letter to the IRS also stated that "[t]he remaining amount of the Dillon deposit, $52,168,388 should remain as a deposit."

IRS Agent Timothy Stern informed plaintiffs on March 6, 2017, however, that the Successor Trusts would need to submit a written request to the IRS and ask for the return of the deposits in order to make a tax payment for the Original Trusts. In doing so, Agent Stern relied on an IRS advice memorandum, which states that Revenue Procedure 2005-18 "does not authorize a person to direct the Service to apply a deposit to pay another person's liability." I.R.S. Off. of Chief Couns. Mem. 20171801F at 1 (decided Feb. 27, 2017, released May 5, 2017) ("CCM"). Although the IRS refused to use the Successor Trusts' deposits for payment of the Original Trusts' liabilities, it used the deposits that plaintiffs had asked to be allocated to Trust 709204 and Trust 709210—both Original Trusts—to pay for those same trusts' liabilities on May 29, 2017.

Per Agent Stern's instructions, plaintiffs wrote a letter to the IRS on March 16, 2017, requesting the return of the deposits that they had previously asked the IRS to allocate to four Successor Trusts. The request was followed by a mandamus action filed on June 27, 2017, which was voluntarily dismissed on July 31, 2017. Plaintiffs received those deposits as requested, with interest,[3] in August 2017. Plaintiffs then requested the return of the remaining $51.5 million in deposits and received them with interest in October 2017. Once the IRS returned the deposits, plaintiffs paid the Original Trusts' liabilities in full, including underpayment interest accrued during the period when the IRS held plaintiffs' deposits. (In the case of terminated Original Trusts, a Successor Trust made the tax payment on behalf of an Original Trust.)

In the pending refund suits, plaintiffs have made a separate claim regarding interest payment: namely, that they did not owe underpayment interest during the period when the IRS held their deposits.[4] In October 2022, defendant moved to dismiss that claim for lack of subject matter jurisdiction,

[3] The rate of interest for a returned deposit is lower than the rate of interest for an underpayment. See I.R.C. §§ 6603(d)(4), 6621.

[4] This amount of interest is a part of the refund sought in plaintiffs' other claim in these suits: namely, that they are entitled to a refund of all taxes, penalties, and interest paid because they are not liable as transferees under §6901.

or in the alternative, for partial summary judgment. Defendant argued that I.R.C. § 6603 mandates underpayment interest suspension only when the IRS uses a deposit for a payment of tax and that interest cannot be suspended for plaintiffs without retroactive treatment of their deposits as having been used for tax payments—a power that defendant argued this court lacks because sovereign immunity has not been waived in that respect.

We denied defendant's motion for partial dismissal, holding that plaintiffs have made a non-frivolous allegation of an illegal exaction claim, which is a type of claim over which this court has subject matter jurisdiction under the Tucker Act. We granted defendant's motion for partial summary judgment, however, because "under the undisputed material facts, the IRS's collection of interest for the period at issue did not violate the law." Order at 15. Plaintiffs then moved for reconsideration of our order granting partial summary judgment. Specifically, plaintiffs argue that reconsideration is appropriate because the court "(1) appears to have misunderstood that Plaintiffs *were* arguing that the IRS exceeded its discretion and then (2) made an erroneous decision beyond the scope of the parties' briefing by holding that the IRS has unfettered, unreviewable discretion to refuse to use a deposit to pay a tax." Pls.' Mot. for Recons. at 3.[5]

A motion for reconsideration is "not an invitation for litigants to treat interlocutory decisions as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 533 (2021); *see also L-3 Commc'n Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 49 (2011) ("A motion

---

[5] For reference, plaintiffs advanced three arguments in their opposition to defendant's motion for partial summary judgment ("Pls.' Opp'n to Def.'s Mot."). First, they argued that they did not owe underpayment interest because they "did not have underpayments for the period the IRS held the cash deposits." Pls.' Opp'n to Def.'s Mot. at 15. Second, they argued that a "parade of IRS mistakes" (identified as Mistake #1 through 4 in the statement of facts) allowed the IRS to reap a $10 million windfall, and that whatever discretion the IRS may have under § 6603 "surely cannot be so broad as to allow the IRS to reap a windfall from its own bureaucratic incompetence or intransigence or both." *Id*. at 17. Finally, they argued that "there is no legal ground for the IRS's refusal to convert the cash deposits to tax payments," challenging the CCM the IRS relied on as "not entitled to any deference" and containing "specious reasoning by IRS counsel." *Id*. at 17-18. We understood then and still understand now that plaintiffs' second and third arguments challenge the IRS's exercise of discretion under § 6603.

for reconsideration is not intended . . . to give an unhappy litigant an additional chance to sway the court.") (internal citation and quotation marks omitted). Reconsideration of an interlocutory order under RCFC 54(b) is available as "justice requires," a determination left to the "wide discretion" of the court. *E&I Glob. Energy Servs.*, 152 Fed. Cl. at 533 (contrasting the standard under RCFC 54(b) against the "heightened standards" of RCFC 59(a)). Where legal conclusions are concerned, justice does not require a different outcome if the "issues are well-settled and the decisions well-reasoned." *See id.* at 536 (holding that there were "no compelling reasons" to revisit the court's legal conclusions).

Justice does not require a different outcome in this instance. In our previous order, we construed plaintiffs' assertion to be that interest collection was illegal because the IRS should have used the deposits that plaintiffs had allocated to the Successor Trusts to pay the Original Trusts' liabilities, in which case interest would have been suspended under § 6603 as of May 2015. To the extent the IRS's refusal to do so arose from a series of "mistakes," we held that this court does not have subject matter jurisdiction to review a claim for the abatement of interest attributable to unreasonable errors and delays by the IRS. *See* Order at 13; *Hinck v. United States*, 550 U.S. 501, 503 (2007) (holding that the Tax Court provides the exclusive forum for judicial review of a failure to abate interest under § 6404(e)(1)). Otherwise, we held that the necessary predicate for plaintiffs' illegal exaction claim was not met because the IRS's refusal to use the Successor Trusts' deposits did not violate relevant provisions of law.

As we have explained, the plain language of § 6603 makes clear that: (1) a deposit is not a tax payment until and unless the IRS uses the deposit to pay a tax;[6] (2) a taxpayer has no statutory entitlement to interest suspension if the IRS does not actually use a deposit for a payment of tax; (3) the decision to use a deposit for a payment of tax is subject to IRS discretion.[7] Even if the

_____

[6] Not only is the distinction between deposits and payments clear on the face of § 6603, but legislative history also confirms that "[a] deposit is not a payment of tax prior to the time the deposited amount is used to pay a tax." H.R. Rep. No. 108-548, pt. 1, at 312. As such, the Tax Court's holding with regard to the designation of *payments* in *Dixon v. Comm'r* does not apply to this case. *See* 141 T.C. 173, 195 (2013) (holding that the IRS's failure to honor a corporation's designation of delinquent tax payments as payments for its employees' income tax liabilities was an abuse of discretion).

[7] Contrary to plaintiffs' assertion, our previous order did not hold that the absence of statutory constraints on the IRS's discretion made its actions

"undisputed purpose of § 6603 is to enable taxpayers to avoid interest liability," Pls.' Mot. for Recons. at 8, Congress pointedly left room for the IRS to *not* to use a deposit as a payment of tax by using the word "may" instead of "shall." *See* § 6603(a) ("A taxpayer may make a cash deposit with the Secretary which *may* be used by the Secretary to pay any tax . . . .") (emphasis added). Whereas § 6603(c) provides that "the Secretary shall return to the taxpayer any amount of the deposit . . . which the taxpayer requests in writing," there is no comparable requirement mandating the use of a deposit, either generally or in cases where the taxpayer makes such a request in writing. It is thus beyond doubt that the IRS's use of a deposit for tax payment is discretionary, not mandatory, under § 6603.

How the IRS has chosen to exercise that discretion is reflected in Rev. Proc. 2005-18, which provides in part that

> Upon completion of an examination . . . the Service will mail a notice of deficiency and the taxpayer will have a right to petition the Tax Court. The portion of the deposit that is not greater than the determined deficiency plus any interest . . . will be posted to the taxpayer's account as a payment of tax upon the expiration of the 90 or 150-day period during which assessment is stayed, unless the taxpayer files a petition with the Tax Court and requests in writing . . . . that the deposit continue to be treated as a deposit during the applicable Tax Court proceeding. § 4.02(2).

The procedure, in short, does not contemplate a taxpayer's request as triggering the IRS's duty to use a deposit as a tax payment in the first place. A taxpayer's request is effective only for *preventing* the IRS's use of a deposit or for directing the IRS to apply *excess* deposits to another tax liability. *See* §4.02(3). The IRS's application of a deposit toward payment of

---

unreviewable. We expressly noted that plaintiffs do not bring their claim under the APA; nevertheless, we examined the case law under the APA because it was "instructive for showing the kind of statutory language necessary to limit agency discretion," and pointed out the absence of comparable language in § 6603. *See* Order at 13. The absence of statutory factors guiding the IRS's exercise of discretion (factors that also guide any review of the agency's actions) was relevant because an illegal exaction claim requires a showing that "the valued sued for was improperly paid, exacted or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *See id*. at 8 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967). As it was, we found no provision of law that the IRS's exercise of discretion contravened.

an assessed liability is otherwise automatic—provided that the taxpayer that made the deposit is the same taxpayer that has been assessed the liability. Although Rev. Proc. 2005-18 does not explicitly say so, the CCM on which Agent Stern relied states that the procedure "does not authorize a person to direct the Service to apply a deposit to pay another person's liability." CCM at 1.

In the light of this statutory and regulatory framework, we held that "no provision of law allows for a finding of illegality necessary to support plaintiffs' illegal exaction claim," so that defendant was entitled to judgment as a matter of law. *See* Order at 14-15. There is, simply put, no provision of law that required the IRS to use the Successor Trusts' deposits to pay for the liabilities of the Original Trusts—whether because plaintiffs requested it or because the deposits should have been automatically applied. Had the IRS issued notices of liability to the Successor Trusts, not the Original Trusts, in October 2016, the result would have been different. Rev. Proc. 2005-18 would then have required the IRS to apply the Successor Trusts' deposits toward payment of the Successor Trusts' liabilities at the end of the period during which assessment had been stayed, unless those Trusts requested otherwise. But those are not the facts here.[8]

Nor was it an abuse of discretion for the IRS to refuse to use the Successor Trusts' deposits for payment of the Original Trusts' liabilities. *See Onan Corp. v. United States*, 19 Cl. Ct. 678, 681 (1990) (holding that the plaintiff stated no claim for an abuse of discretion because the announced procedure that the IRS failed to observe was "not adopted to further any existing right of taxpayers"). Rather, the agency's decision was based on a reasonable interpretation of Rev. Proc. 2005-18, as offered in the CCM. *See Am. Exp. Co. v. United States*, 47 Fed. Cl. 127, 136 (2000) (holding that the Commissioner's decision was not an abuse of discretion because there is "no evidence that the Commissioner ignored the Revenue Procedure, . . . [or] that he made an unreasonable determination"). Much as plaintiffs may disagree with the reasoning or the result, the CCM supports its position with an

---

[8] As for the IRS's failure to issue the notices of liability to the Successor Trusts in the first place, we held that such a failure did not violate the law because the Field Service Advisory that plaintiffs rely on specifically states that it is "not to be cited as precedent." *See* Order at 12. At best, it was a "mistake" as plaintiffs had described, for which a claim for the abatement of interest attributable to unreasonable errors and delays by the IRS may be available—but which this court lacks subject matter jurisdiction to review. *See id*. at 13.

examination of the structure, purpose, and language of Rev. Proc. 2005-18.[9] Specifically, it points to § 4.02(3) and § 6.01 as presupposing that any deposit to be applied as a payment must have been made by the same taxpayer that has been assessed the liability. *See* CCM at 4. In the administration of taxes, including the use of deposits for tax payments, the question of which taxpayer has actually been assessed the liability at issue is not an unreasonable factor for the IRS to consider.

The significance of assessments in the context of deposits is underscored by plaintiffs' own explanation of the purpose and structure of §6603: "[I]f no tax is assessed against the taxpayer, there is no tax against which the IRS can apply the deposit." Pls.' Mot. for Recons. at 14. Nevertheless, plaintiffs view the identity of the assessed taxpayer as irrelevant, citing *United States v. Williams*, 514 U.S. 527, 535 (1995) (holding that I.R.C. § 1346(1) authorizes a refund suit by a party who was not assessed a tax but paid it under protest to remove a federal tax lien on her property). Specifically, they argue that the Successor Trusts were "plainly 'subject to' the tax that they sought to pay with the deposit, since they ultimately had to pay that tax (with interest) as alleged transferees." Pls.' Mot. for Recons. at 21. Being "subject to" the tax owed by the Original Trusts, plaintiffs assert that the Successor Trusts should have had the ability to make deposits to pay the Original Trusts' liabilities.

Plaintiffs' reliance on *Williams* in this regard is misplaced. In finding standing for the respondent's refund suit, the Court did not render the identities of assessed parties irrelevant in the general administration of taxes. Rather, the Court rejected the government's argument that only the assessed

---

[9] Although plaintiffs previously argued that the CCM was not entitled to any deference, citing *AMP Inc. & Consol. Subsidiaries v. United States*, 185 F.3d 1333, 1339 (Fed. Cir. 1999), the case is distinguishable. In *AMP Inc. & Consol. Subsidiaries* the court held that the revenue ruling was not entitled to deference because it was "self-serving" in light of the plaintiffs' refund claims that were pending when the ruling was issued and "inconsistent" with other regulations and pronouncements by the IRS. *Id.* Here, the CCM was not "self-serving" since there was no litigating position for the IRS to prepare vis-à-vis a pending claim: when issuing the CCM in February 2017, the IRS did not know that plaintiffs would file refund suits in December 2017 that included a separate claim for interest based on § 6603. The IRS also offered a position that was consistent with its pronouncements to date in relation to § 6603. *See* CCM at 5 ("More concerning is that the guidance issued to date to administer [§ 6603] does not authorize one depositor designating its deposit to be applied to another taxpayer's liability.").

party may exhaust administrative remedies—a prerequisite for refund suits set forth in I.R.C § 7422—on narrower grounds. *See* 514 U.S. at 534-35. First, the Court reasoned that "[t]o read the term 'taxpayer' as implicitly limiting administrative relief to the party assessed is inconsistent with other provisions of the refund scheme, which expressly contemplate refunds to parties other than the one assessed." *See id*. at 534 (pointing out statutory language such as "the person who made the overpayment" and "the person who paid the tax"). Second, the Court reasoned that the respondent was a "taxpayer" qualified for administrative remedies, because "[i]n placing a lien on her home and then accepting her tax payment under protest, the Government surely subjected Williams to a tax, even though she was not the assessed party." *Id*. at 535 (citing the I.R.C. § 7701(a)(14) definition of a "taxpayer" as "any person subject to any internal revenue tax").

The Court's reasoning in *Williams* does not apply to this case to make the IRS's refusal to use the Successor Trusts' deposits either unlawful or an abuse of discretion. Most importantly, both legal and factual circumstances that underpinned the Court's analysis in *Williams* are missing. The statutory scheme for deposits does not expressly contemplate the IRS's use of deposits when the deposit was made by someone other than the assessed party, and plaintiffs have not alleged that the IRS "subjected" the Successor Trusts to the Original Trusts' tax liabilities by placing a lien on the Successor Trusts' property.[10] And as the Court took care to stress, the holding of *Williams* is narrow. *See id*. at 540 ("We do not decide the circumstances, if any, under which a party who volunteers to pay a tax assessed against someone else may seek a refund under § 1346(a)."). *Williams* certainly does not stand for the proposition that the IRS may never take into account which taxpayer was actually assessed when exercising discretion authorized by a statute.

We do not find a compelling reason to revise our holding that under the undisputed material facts, the IRS's collection of interest for the period at issue did not violate the law. Nor do we find that the IRS abused its discretion by refusing to use the Successor Trusts' deposits for payment of the Original Trusts' liabilities.

Because justice does not require a different outcome, plaintiffs' motion for reconsideration is DENIED.

---

[10] Although plaintiffs have alleged the "threat of collection actions" as necessitating their mandamus action, *see* Order at 5, they have not alleged that the IRS filed any liens on the Successor Trusts' property.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge